# United States District Court

SOUTHERN DISTRICT ———— DISTRICT OF ———— NEW YORK

RAJIV JAIN,

                Plaintiff

V.

ENDURANCE REINSURANCE
CORPORATION OF AMERICA,

                Defendant.

**ECF CASE**

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**05 CV 4259**

**JUDGE KARAS**

TO: (Name and address of defendant)

ENDURANCE REINSURANCE CORPORATION OF AMERICA
333 WESTCHESTER AVENUE
WHITE PLAINS, NEW YORK 10604

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

KOUSOULAS & ASSOCIATES P.C.
41 MADISON AVENUE, 40th FLOOR
NEW YORK, NEW YORK 10010

an answer to the complaint which is herewith served upon you, within _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

*Jessica Doss* (signature)

(BY) DEPUTY CLERK

APR 29 2005

DATE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
RAJIV JAIN,

                                      Plaintiff,                    COMPLAINT

              -against-                                       Civ.

                                                                **TRIAL BY JURY DEMANDED**

ENDURANCE REINSURANCE CORPORATION
OF AMERICA,

                                      Defendant.
-------------------------------------------------------------x

        Plaintiff, by his attorneys, Kousoulas & Associates P.C., for his Complaint against defendant, alleges the following:

        1.      This is a civil rights action for declaratory relief, equitable relief, compensatory and punitive damages and other relief, to redress violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., 42 U.S.C. §1981, and the New York Human Rights Law, as codified in New York Executive Law §290 et seq. on the basis of plaintiff's race, color and national origin.

**Jurisdiction and Venue**

        2.      Plaintiff files this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., 42 U.S.C. §1981, and the New York Human Rights Law, as codified in New York Executive Law §290 et seq.

3.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343, and the doctrine of pendent jurisdiction.

4.   Venue is properly laid in the Southern District of New York because a substantial part of the events and omissions giving rise to the claims set forth herein occurred in the Southern District of New York.

5.   The plaintiff timely pursued all applicable administrative remedies. Plaintiff filed this action within 90 days of receipt of a notice of right to sue, issued on February 9, 2005 by the United Stated Equal Employment Opportunity Commission.

6.   Plaintiff demands a trial by jury in this action.

### Parties

7.   Plaintiff, RAJIV JAIN, (hereinafter "plaintiff"), is a non-white South Asian male of Indian national origin. Plaintiff is a resident of the City and State of New York.

8.   Upon information and belief, defendant, ENDURANCE REINSURANCE CORPORATION OF AMERICA, (hereinafter "Endurance" or "defendant"), at all relevant times herein, is an entity that conducts business and maintains offices within the State of New York. Defendant is an "employer" as defined by Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law, as codified in Executive Law §292, employing in excess of fifteen individuals.

### Facts

9.   Plaintiff is an Master of Business Administration (MBA) graduate who, prior to his

employment with defendant, was employed by Hartford Reinsurance, ("HatrfordRe"), a division of The Hartford Financial Services Group, Inc., where he gained experience in marketing research and underwriting from 2000 until 2003.

10. In or about May of 2003, approximately seventy percent of HartfordRe's business was taken over by Endurance. Plaintiff was hired by Endurance as part of defendant's acquisition of HartfordRe's business.

11. As a result of the take-over process, defendant acquired approximately twenty-three former HartfordRe employees. Of these twenty-three individuals, eighteen, including plaintiff, were assigned to the White Plains Office, at 333 Westchester Avenue, White Plains, New York. Only two of the twenty-three employees acquired by Endurance are South Asian, plaintiff and Saima Haider (Pakistani) who is employed as a claims coordinator. Thirteen of the twenty-three individuals were hired by Endurance as underwriters.

12. Plaintiff is the only non-white, Indian and South Asian underwriter of the thirteen underwriters acquired by defendant from HartfordRe, the remainder are white Americans. All of the former HartfordRe underwriters were offered an increase in salary of twenty five percent or more when hired by Endurance, except for plaintiff, who was given the lowest increase in salary, ten percent.

13. Defendant's choice regarding which HartfordRe employees it acquired to fulfill its immediate staffing needs was limited because many HartfordRe employees were ineligible to be transferred to Endurance. Upon information and belief, Endurance was required to employ a set number of HartfordRe employees as part of the take-over agreement. Upon information and belief, Endurance hired every Hartford underwriter who was interviewed and who did not otherwise

indicate that he or she was not interested in the position.

14. On May 7, 2003, plaintiff received an offer of employment from Endurance. The offer letter stated that plaintiff would be employed as a Casualty Treaty Underwriter, working as a "treaty underwriter in a designated territory, with a specific emphasis on casualty treaty underwriting."

15. Plaintiff commenced his employment as a Casualty Treaty Underwriter for Endurance on May 26, 2003. In or about June of 2003, plaintiff and the other underwriters who were acquired from HartfordRe were assigned to Endurance's White Plains office.

16. Shortly after the commencement of his employment, upon plaintiff's request, defendant enrolled plaintiff in a three week sales underwriting training program provided by The Hartford Financial Services Group, Inc., in Hartford, Connecticut. Plaintiff never attended the training course, which was scheduled to commence in August, 2003 as defendant postponed plaintiff's attendance from August until October, 2003, after plaintiff's employment had been terminated.

17. For the greater part of plaintiff's employment with defendant, plaintiff was not provided with a proper workstation that was befitting of his experience and/or qualifications, or similar to that given to other underwriters in Endurance's White Plains office. At the start of his employment, plaintiff was assigned to an open center cubicle, which was occupied by clerical and administrative staff members. No other underwriters, who were employed on a permanent basis and who were stationed at the White Plains office of Endurance, were assigned to the open center cubicle. On or about August 11, 2003, after he had complained on numerous occasions regarding

the seating arrangement, plaintiff was assigned to a cubicle. However, approximately two weeks later, when plaintiff was in Endurance's Hartford, Connecticut office, defendant relocated plaintiff's workstation without notice back to the open center cubicle. All the other white, American underwriters employed by Endurance during the course of plaintiff's employment were provided with cubicles or designated offices.

18.   During the course of his employment with Endurance, plaintiff was also not assigned specific duties and responsibilities as a Casualty Treaty Underwriter, or assigned to a designated territory with specific emphasis on casualty treaty underwriting, as per his offer letter of May 7, 2003. Upon information and belief, all of the white, American underwriters acquired from HartfordRe were initially assigned casualty treating underwriting responsibilities and assigned to designated territories.

19.   During the orientation meetings that took place on June 7, 2003 and June 8, 2003, underwriters that were acquired from HartfordRe were assigned to their respective divisions within Endurance. Plaintiff, however, was not assigned to an Endurance underwriting division at the time. Plaintiff discussed his amorphous position with Steve Dresner, ("Dresner"), Territorial Manager of the West Coast Division of Endurance and former employee of HartfordRe. In response, plaintiff was temporarily assigned to a research position, assisting Joan DeLamps ("DeLamps"). Soon thereafter, plaintiff was moved from the supervision of DeLamps, because she did not have enough time to supervise him.

20.   On June 23, 2003, plaintiff was nominally assigned to the 'West Coast Division' of Endurance. As a result, he was directly supervised by Dresner, while assigned to work in the White

Plains office. Notwithstanding plaintiff's nominal placement in the West Coast Division, defendant still failed to provide plaintiff with a definite set of underwriting duties and responsibilities. Under Dresner's supervision, plaintiff was left without guidance and supervision for much of the time because Dresner was absent from the White Plains office for extended periods.

21. The duties to which plaintiff was mainly assigned during his employment with defendant were data entry and other information technology related tasks, research projects, administrative duties and file management. No other underwriter was assigned such menial duties as a major part of his or her underwriting responsibilities.

22. During a meeting in early August, 2003 with Dresner and Cheryl Smith, Vice President of Human Resources at Endurance, plaintiff noted concerns that he was not provided with enough work assignments, that the work to which he was assigned was not commensurate with his education and/or experience, and that his assigned tasks were not in accordance with the duties set forth in the offer of employment letter provided to him in May, 2003 by Endurance.

23. Defendant subjected plaintiff to disparate treatment in relation to his coworkers at Endurance who were not of the same ethnicity, national origin or of color. For example, Jessica Bongiorno, a former HartfordRe employee who is a white American and who was hired as an underwriter by Endurance at the same time as plaintiff, was provided with a defined set of underwriting duties and responsibilities soon after the start of her employment. In or about September of 2003, Matthew Dober, ("Dober"), who is white American and who had substantially less experience than plaintiff, was provided with a cubicle in which to work within approximately two weeks after his assignment commenced. Dober had no experience in the area of reinsurance

prior to his employment with Endurance.

24.   On September 8, 2003, plaintiff requested to meet with Dresner, and Smith to discuss his inadequate workstation and the fact that he had not been provided with a defined set of duties and responsibilities by Endurance. During the meeting, plaintiff was informed that he would not be relocated to a cubicle and that he would continue to work in the open work center. Plaintiff was also informed that he would soon be provided with a definite set of duties. At no time during this meeting did Dresner or Smith criticize plaintiff's work performance.

25.   Later that day, Dresner sent plaintiff an email correspondence regarding the September 8, 2003 meeting. In the correspondence, Dresner set forth a number of general work performance guidelines to which plaintiff had to adhere over the following thirty days. Plaintiff had not been issued any warnings nor had he been counseled in any manner regarding his work performance prior to September 8, 2003.

26.   By e-mail correspondence to Dresner dated September 16, 2003, plaintiff requested work assignments from Dresner in order for defendant to have a basis for assessing his work performance. Dresner did not respond to the e-mail correspondence, and defendant did not provide plaintiff specific assignments.

27.   On September 30, 2003, before the thirty days had lapsed, plaintiff was informed that his employment with Endurance would be terminated. During the meeting, Smith, Vice President of Human Resources, informed plaintiff that he was not the right "cultural fit" for the company. No reference was made by Smith to plaintiff's work performance as a reason for the termination.

28. Plaintiff was subjected to discrimination in the terms and conditions of his employment because of his race, color and national origin, in violation of 42 U.S.C. 2000e, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., 42 U.S.C. §1981, and the New York Human Rights Law, as codified in New York Executive Law §290 et seq.

29. As a direct result of the unlawful actions of defendant, plaintiff is now suffering, and will continue to suffer emotional pain, suffering, inconvenience and mental anguish, lost of enjoyment of life and other non-pecuniary loses.

30. As a direct result of defendant's unlawful actions, plaintiff has suffered and will continue to suffer pecuniary losses, including lost income, lost future earnings and lost benefits.

**FIRST CLAIM FOR RELIEF**

31. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "30" as if fully set forth herein.

32. Defendant discriminated against plaintiff in the terms and conditions of his employment because of his race, color and national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.

33. As a direct and proximate result of defendant's actions, plaintiff suffered and continues to suffer actual damages, in forms including but not limited to lost income, lost future earnings and mental anguish and pain and suffering.

## SECOND CLAIM FOR RELIEF

34. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "33" as if fully set forth herein.

35. Defendant discriminated against plaintiff in the terms and conditions of his employment because of his race, color and national origin, in violation of the New York Human Rights Law, as codified in New York Executive Law §290 et seq.

36. As a direct and proximate result of defendant's actions, plaintiff suffered and continues to suffer actual damages, in forms including but not limited to lost income, lost future earnings and mental anguish and pain and suffering.

## THIRD CLAIM FOR RELIEF

37. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "35" as if fully set forth herein.

38. Defendants discriminated against plaintiff with respect to the terms and conditions of his employment and terminated his employment because of plaintiff's race, color and national origin in violation of 42 U.S.C. §1981.

39. As a direct and proximate result of defendant's actions, plaintiff suffered and continues to suffer actual damages, in forms including but not limited to lost income, lost future earnings and mental anguish and pain and suffering.

WHEREFORE, Plaintiff respectfully prays for judgment in his favor against defendant as follows:

1.  Declaring that defendant's acts complained of herein violated plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., 42 U.S.C. §1981, and the New York Executive Law §290 et seq.

2.  Awarding plaintiff a money judgment for his damages, including but not limited to, lost wages, lost benefits, future wages, other economic damages, shame, humiliation, embarrassment and mental distress.

3.  Awarding plaintiff punitive damages for defendant's willful and wanton disregard of his rights.

4.  Awarding plaintiff costs and attorneys fees actually incurred in connection with the bringing of this action.

5.  Granting such further and additional relief as the Court deems just and proper.

Dated: New York, New York
       April 28, 2005

                                        KOUSOULAS & ASSOCIATES P.C.
                                        *Attorneys for Plaintiff*
                                        41 Madison Avenue, 40th Floor
                                        New York, New York 10010
                                        (212) 509-2566

                              By:       _____
                                        ANTONIA KOUSOULAS (AK8701)